IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BETTY FRANKLIN,

                   Plaintiff,

     vs.                                     CIVIL NO.  12-1167 KBM/LFG

UNITED STATES OF AMERICA,

                   Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO OVERRULE OBJECTIONS AND COMPEL DISCOVERY

THIS MATTER is before the Court on two motions to compel filed by Plaintiff Betty Franklin ("Franklin"): (1) "Motion to Overrule Defendant's Objections and Compel Complete Interrogatory Answers" [Doc. 46]; and (2) "Motion to Overrule Defendant's Objections and Compel Complete Responses to Requests for Production [Doc. 47]. The Court considered the motions, the United States' Responses [Docs. 51, 55], and Franklin's Replies [Docs. 56, 61]. This matter will be resolved based on the parties' submissions. D.N.M.LR-Civ. 7.6(a). After careful consideration of the pertinent law and the pleadings, with attachments, the Court grants the motions in part and denies them in part.

## Background

Franklin states that she served twelve "routine interrogatories" on Defendant United States ("United States" or government), and that the United States filed objections and limited its answers. Franklin informed the government that the objections were invalid and that all of the partial answers were incomplete, except for the answer to Interrogatory No. 4. The Court allowed the parties additional time to try to resolve this dispute, but Franklin still contends that the government's

answers are deficient.  Specifically at issue are the United States' answers to Interrogatory Nos. 1, 2, 3, 5, 6, 7, 8, 9, 10, and 11. [Doc. 46, at 2.]

The United States explains its position that the parties have "fundamentally different views on the "claims and defenses" in this case and, therefore, the scope of discovery.  According to the government, the scope of discovery is not as broad as Franklin argues. [Doc. 51, at 1.]  The United States avers that it responded fully to the discovery requests.

## Legal Standard

Rule 26 defines the scope of discovery.  Parties may obtain discovery regarding any non-privileged matter that is relevant to a party's claims or defenses.  Fed. R. Civ. P. 26(b)(1).  Relevant information need not be admissible at trial but must appear reasonably calculated to lead to the discovery of admissible evidence.  All discovery, however, is subject to limitations set out in Rule 26(b)(2)(C).

That portion of Rule 26 allows a court to limit discovery if it determines that the discovery sought is unreasonably cumulative or duplicative, or could be obtained from another source that is more convenient or less expensive.  In addition, a court can limit discovery requests if the burden or expense of the proposed discovery outweighs its likely benefit in view of the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake, and the importance of the discovery at issue.  Fed. R. Civ. P. 26(b)(2)(C)(i) and (iii).  *See also* Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d 508, 517 (D.C. Cir. 1996) (discussing balancing factors with respect to FOIA case).

The scope of discovery generally is broad.  This was particularly true historically.  Liberal discovery rules utilized in federal courts were designed to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable

2

extent." United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958) (*citing* Hickman v. Taylor, 329 U.S. 495, 501 (1947)).

However, the 1993 and 2000 amendments to Rule 26 intended to involve the court more actively in regulating the breadth of sweeping or contentious discovery. Committee notes to the amendments indicate that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery. The Committee intended that the parties and the court focus on the actual claims and defenses involved in the litigation. The determination of whether information is discoverable depends on the circumstances of each case.

This rule change signaled to the court that it "has the authority to confine discovery to the claims and defenses," and also alerted parties that they were not entitled to develop new claims or defenses not already identified in the pleadings. Advisory Committee Notes, 2000 Amendments, Rule 26(b)(1). The Court is to balance one party's right of discovery against the opposing party's right to be free from intrusive and burdensome discovery. *See, e.g.,* Koch v. Koch Indus., Inc., 203 F.3d 1202, 1238 (10th Cir.), *cert. denied*, 531 U.S. 926 (2000).

The Court further observes that the single biggest complaint about litigation is that the discovery process is abused. *See* Mancia v. Mayflower Textile Servs., Co., 253 F.R.D. 354, 358-361 (D. Md. 2008) (in specifically addressing requirements of Rule 26(g), district court judge discussed discovery abuses at length). Typically, discovery abuses occur when one party seeks information far in excess of what is reasonable and necessary or proportional to the needs of the case. The abuse is compounded when the other party opposes discovery of relevant evidence, relying on a litany of knee jerk objections, *e.g.,* vague, overly broad, burdensome, and not calculated to lead to discoverable information. *See* Id.

To avoid discovery abuse and reduce the costs of litigation, amendments to Rule 26 limited the scope of discovery to "[a]ny non privileged matter that is relevant to any party's claim or defense . . . ."  This limitation ensured that discovery would no longer be used to troll for new claims or causes of action, but that the requested discovery was relevant to the specific claims and defenses before the court.  Fed. R. Civ. P. 26(b)(1).  In other words, the changes to Rule 26 injected a requirement that a court determine whether the discovery sought is proportional to the needs of the case.  If determined not proportional, the court must limit the discovery.

**Discussion**

A.      FRANKLIN'S MOTION TO COMPEL #1 (interrogatories):

**Interrogatory No. 1**.

Franklin requested that the United States "Identify each involved staff, who was present during the surgery performed on plaintiff on October 14, 2010."  The United States responded:

ANSWER:

>       K. Wilder, MD OB/GYN
>       J. Kang, MD OB/GYN
>       D. Johenk, DO Anesthesia
>       L. Fetzer, RN OR
>       M. Braesch, ST

In supplemental answers, the United States provided full address information and some telephone numbers. [Doc. 46-2, at 3.]

Franklin complains that the responses were not complete in that the government supplied initials of these individuals' first names, rather than the entire first name, and that the government provided initials for the individuals' positions, instead of their full title.  The United States agreed to provide supplemental answers with the complete first names and job titles of the individuals. [Doc. 51, at 3.]

4

Franklin's June 26, 2013 letter [Doc. 46-4] gives the impression that Plaintiff is satisfied with the answer – "[y]our supplemental answer to Interrogatory No. 1 identifies persons in the surgical suite at the time of the October 14, 2010, surgery.  Thank you."  However, Franklin's reply indicates the answer is insufficient, notwithstanding the government's second supplemental answer that was served on August 1, 2013 [Doc. 53]. [Doc. 46, at 2.] Franklin states that she asked for the identities of all staff in the operating room on the date in question, but that the United States consistently was evasive in responding and that it also failed to identify a person named Baum, whose last name is on the operating room report.  According to Franklin, the government did not fully answer a simple eye-witness identification interrogatory after a period of more than four months.

Franklin's complaint about the United States' responses is not well-taken.  For example, the contention that the government's responses are deficient because, "Defendant ignored the meaning of 'identify' by, at first listing only a person's last name, the first letter of the first name, and an abbreviation for job title" is not supported.  Franklin is represented by a highly skilled and experienced medical malpractice attorney.  It defies credulity that an experienced malpractice litigator would not know the meaning of "MD OB/GYN," "DO Anesthesia," or "RN OR." Moreover, the United States subsequently supplemented a first name or the initials and provided available contact information.

The Court denies Franklin's motion to overrule the United States' objections to Interrogatory No. 1.

**<u>Interrogatory No. 2</u>**

Franklin ask the United States to describe "plaintiff's current medical condition and her long-term prognosis."   The United States objects, contending that this information is equally available to Franklin.  Indeed, that is the case.  Rule 26(b)(2)(C)(i) requires that the Court limit the frequency

or extent of discovery when the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Clearly, Franklin's present condition is known to her and her treating physician.  Her own treating physician can provide her prognosis.  The United States is not required to bring Franklin back to a hospital and evaluate her, or to pour through Franklin's medical records, which she herself has, and give a present diagnosis.  Accordingly, the Court denies Franklin's motion to overrule the United States' objections to Interrogatory No. 2.

### Interrogatory No. 3

Franklin asks the Court to order the United States to:

> Identify by title, author, edition, and date of publication all authoritative treatises and medical literature you or any of your witnesses have knowledge of, including any such treatises and literature you plan to use or introduce as evidence at trial, that address the standard of care and the risks of injury to the bladder or ureters during the kind of gynecological surgery performed on plaintiff on October 14, 2010.

[Doc. 46-2.]

The United States objected, contending that the request is overly broad and unduly burdensome.  Indeed, the United States argues it is impossible for each witness to be able to list all of the treatises and literature that he or she reviewed during the course of medical school coursework and medical careers.  Moreover, the United States correctly notes that when it makes expert disclosures, its experts will disclose information on which the experts relied.  Fed. R. Civ. P. 26(a)(2)(B)(ii, iii).

The Court sustains the United States' objection.  First, a party may not circumvent the timing and sequence of discovery as established by the Court. The Court established deadlines for disclosure of expert witnesses, opinions, the basis of the opinions, and the material on which the

expert relies.  A party may not seek to avoid those limits by asking the same kind of information in a request for discovery which predates the disclosure deadlines established by the Court.

Secondly, the Court determines that the request is again barred by the proportionality requirements of 26(b)(2)(C).  The request is exceedingly broad and goes far beyond Franklin's needs or claims.  Clearly, the United States will be required to have its experts disclose the basis of their opinions; and to the extent those experts rely on exhibits, treatises or other documents, those disclosures must be made in the expert reports.  The Court denies Franklin's motion to overrule Defendant's objections as to Interrogatory No. 3.  Moreover, after receipt of Franklin's objections, the United States supplemented its answers.  The Court denies Franklin's motion to compel a further response.

**Interrogatory No. 5**

Franklin requests Dr. Wilder's "entire educational and professional background up to the present time, including places and dates of employment or association, the nature of her employment, and the identification of all physicians with whom she has practiced in her area of specialization."

The United States objected on grounds that the interrogatory sought overly broad and unduly burdensome information, and that it was not reasonably calculated to lead to the discovery of admissible evidence. [Doc. 46-2.] The government particularly objected to identifying physicians with whom Dr. Wilder worked.  Without waiving these objections, the United States produced Dr. Wilder's CV.  Since the filing of the motion, an updated CV was given to Franklin.

Franklin argues that the government provided updated CVs of Dr. Wilder and Dr. Kang, months late, and "worse, only after our expert witness on liability had been prepared." [Doc. 56, at 4.] Thus, Franklin states that she now may need to seek leave to submit an amended expert witness

report due to "the trickle of information." [Id. n.5] Franklin further asserts that the CVs represent "only a sliver" of information she requested.

If Franklin has a basis to seek leave to amend her expert's report because the CVs were incomplete or inadequate, she may file a motion and the Court will consider whether good cause exists to allow an amended expert report. However, the Court notes that the names of all physicians with whom Dr. Wilder worked over the course of her career is hardly relevant to Franklin's claims. To the extent there is any minimal relevance, it is outweighed by the burden imposed to track down that information, a task that appears overwhelming.

The Court finds no basis to require further answers to Interrogatory No. 5 and denies Franklin's motion to overrule objections.

**Interrogatory No. 6**

Franklin asks for information without any limitation, as to time or place, whether Dr. Wilder has ever been arrested, accused or convicted of a crime, and requires specific information concerning docket numbers, year, state, crime involved and outcome of any charges. The government objected that the interrogatory was not relevant to the claims or defenses. Without waiving the objection, the United States answered that it was not aware that Dr. Wilder was convicted within the last ten years of a crime punishable by death or by imprisonment for more than one year or a crime involving dishonesty or a false statement. [Doc. 46-2.] Franklin asserts that Dr. Wilder's alleged criminal history is a legitimate topic for discovery. [Doc. 56, at 5.]

The Court generally disagrees. First, none of the information sought, save for a felony conviction within a ten-year period of time, would be admissible. While the court recognizes a difference between discovery and admissibility of evidence, the request is still far too broad and too unlimited to be useful. Franklin supplied no time limitation. Thus, this interrogatory is so broad

8

that it could include an accusation against the doctor of "filching" penny candy from a store in her childhood.

Second, misdemeanor offenses, even if they exist, have no bearing whatsoever on this case and could not be used for impeachment under Fed. R. Evid. 609.  Third, accusations as opposed to felony convictions have no bearing on this litigation.  Rule 26 requires discovery to be relevant to the claims and defenses in this case.  This type of interrogatory constitutes a fishing expedition.  The Court concludes that this interrogatory seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  In addition, while the government did not initially assert an objection that this interrogatory sought information that was overly broad, the Court concludes it impermissibly seeks such information.

The Court observes, however, that felony convictions can be used for impeachment.  Although the United States says it is unaware of any conviction, the Court will require the United States to confirm whether or not the doctor has been convicted of a felony within the last ten years.  Simply being unaware of such convictions is not a sufficient answer.

**Interrogatory No. 7**

Franklin asks if Dr. Wilder "ever had any illness or condition, physical or mental, related to chemical dependency, substance abuse, drug addiction, or alcohol. . . ."  Franklin asks the government to identify any such illness or condition, describe the nature of it, dates of the illness, whether she still suffers from the problem, and identify providers and institutions that treated her. [Doc. 46-2, at 5-6.]

The government objected on grounds that it was not reasonably calculated to lead to the discovery of admissible evidence.  In addition, the United States objected as it calls for confidential and private healthcare information that is protected by the doctor-patient privilege.  Without waiving

such objections, the government stated it was not aware of any such illnesses or conditions Dr. Wilder had when she treated Franklin that "would have any impact on the care provided." [Id.]

In its responsive brief, the United States argued that the interrogatory was "exceptionally broad" and that the government appropriately narrowed the time frame to the time of surgery. Further, the United States stated that it answered the interrogatory with information it had in its possession or control, but was not at liberty to provide medical information it might have in its possession in accordance with HIPAA requirements and the Privacy Act. [Doc. 51, at 7.]

Franklin states the interrogatory sought information about impairment due to substance abuse, and that in a medical malpractice case, such information is "very relevant." Because the government did not initially object on grounds based in HIPAA or the Privacy Act, Franklin states any such objections are waived. [Doc. 56, at 5.]

The Court agrees that an addiction or substance abuse problem at the time of surgery is relevant. The Court overrules the government's HIPAA objections and requires it to disclose whether the doctor had any chemical dependency, substance abuse, or alcohol dependency at the time of the surgery.

**Interrogatory No. 8**

Franklin requests information as to Dr. Wilder's medical speciality board certifications. Franklin asks if Dr. Wilder ever failed any board-certification examination. The government objected on the ground that the interrogatory sought information that was not reasonably calculated to lead to the discovery of admissible evidence. [Doc. 46-2, at 6.]

The Court concludes that the information sought here is duplicative of the information requested to which Dr. Wilder's CV was produced. As the government provided Dr. Wilder's CV and an updated CV, the Court generally sustains the government's objection and denies Plaintiff's

request to overrule the United States' objection.  If, however, the CV did not disclose board certifications, in that event, the United States must supplement its answer to Interrogatory No. 8.

**Interrogatory No. 9**

Franklin asks the United States to:

> Identify every person who has discoverable knowledge or information about the issues in this litigation, including NNMC and GIMC officers, directors, administrative staff, medical and nursing staff, and other hospital staff, so as to enable plaintiffs to contact all potential witnesses to determine what knowledge they might have that is relevant to the claims and defenses of the parties in this case.

The government objected on grounds that Interrogatory No. 9 did not seek information that was reasonably calculated to lead to the discovery of admissible evidence and was overly broad and ambiguous in that the meaning of "discoverable information" was unclear.  Without waiving its objections, the government referred Franklin to the medical records served on April 4, 2013. [Doc. 46-2, at 6-7.]

The Court bars the information sought by this interrogatory for a number of reasons.  First, the request to identify any individuals who have knowledge of "discoverable information" in this litigation is overly broad.  Such requests might have been allowed before amendments to Rule 26, but discovery is more limited now.  The Advisory Committee learned that it was virtually impossible to comply with such broad requests, thus increasing the costs of investigation and discovery and thereby delaying proceedings.  As a result, in 2000, Rule 26 disclosures were limited to identifying those individuals on whose testimony the disclosing party intended to rely.

Essentially, Franklin's request for the identity of any person who has discoverable information about "the issues in this litigation" amounts to a request that Defendant undertake

Franklin's investigative work.  This is improper and not authorized.  Moreover, such broad discovery far exceeds the proportionality requirements of Rule 26(b)(2)(C).

In this case, the United States must disclose the identity of individuals on whose testimony it intends to rely.  *See* Fed. R. Civ. P. 26(a).  That is sufficient for disclosure purposes.  The Court, therefore, sustains the government's objections and denies Franklin's request to overrule or for supplementation.

### **Interrogatory No. 10**

Franklin asks the United States to "[i]dentify each employee and former employee of NNMC and GIMC who has provided care or been involved in providing care to plaintiff during the last five years."  [Doc. 46-2, at 7.]  The government did not object but referred Franklin to her medical records served on April 4, 2013.

If information requested is equally available to both parties from some other source, as it is here, the Court may determine that there is a more convenient, less expensive way to obtain the information.  Since the medical records will provide Franklin with the requested information, the Court deems those records sufficient.

The burden is not on the United States to undertake a wholesale investigation to find out what employee or former employee ever met with or provided care or assistance to Franklin.  However, if the United States is aware of individuals who provided care for Franklin and whose names are not identified in the records, the United States must supplement its answer to provide these names.  Thus, the Court denies in part and grants in part Franklin's request to compel discovery as to Interrogatory No. 10.

12

**Interrogatory No. 11**

This Interrogatory asks: "[i]f you contend that the need for removal of plaintiff's kidney was not caused in substantial part by damage to plaintiff's ureter and bladder during the surgery of October 14, 2010, please describe in full the factual and medical basis for this contention." [Doc. 46-2, at 7.] The government responded that it is Franklin's burden to prove causation and that it did not have sufficient information at this time to determine if the removal of Franklin's kidney was caused by the surgery on October 14, 2010. [Id.]

This is a contention interrogatory and appropriately served at the end of discovery. Indeed, Franklin asks the United States to express an expert opinion in advance of the date on which the United States is required to disclose experts and issue Rule 26 reports. The Court will not require the government to provide any further supplementation of its response to this Interrogatory.

B.   FRANKLIN'S MOTION TO COMPEL #2 (document requests):

Franklin served eighteen document requests and argues that the government's objections and limited responses were incomplete or improper, except for its response to Request No. 10. [Doc. 47, at 1.] The parties again had additional time to attempt to work out the discovery disputes but were unable to do so.[1] Franklin asserts that the United States' additional responses were "woefully inadequate." [Id.] She contends that Request Nos. 1-9, 11-18 are incomplete. [Id., at 2.] The government disagrees and contends that it fully responded to the document requests or that it asserted well-supported objections.

---

[1]There appears to be a possible dispute by the government that Franklin did not engage in a good-faith attempt to resolve some of the discovery disputes before filing the motion(s). [Doc. 55, at 2-3.] The Court determines that both parties attempted to resolve these matters before Franklin filed the motions and, therefore, reviews the arguments on the merits.

Many of Franklin's Requests for Production suffer from ailments similar to those of her interrogatories.   Generally, they are not proportional to the needs of the case.

**Request for Production No. 1**

Franklin asks for production of:

> . . . any medical chart, nursing record, narrative report, operative report, operative report, physician's order, patient evaluation, patient history, patient diagnosis, radiology record, diagnostic test results (including lab tests), transfer record, note, pathology report, incident report, and other document, including documents obtain from other sources, including the University of New Mexico Hospital and the Gallup Indian Medical Center, about or referring in any way to Betty Franklin.

Rule 26(b)(2)(C)(i) mandates that the Court limit the discovery when the information can be obtained from some other source.   In this case, Franklin has access to all her own medical records, at any government facility or elsewhere.   Thus, the very information Franklin seeks is available to her without imposing the burden or cost on the United States.

The government objected on grounds that the request is overly broad and not calculated to lead to the discovery of admissible evidence.   The United States also objected that Request No. 1 seeks documents that were prepared in anticipation of litigation after Franklin filed her notice of claim.   Thus, the United States contends responsive documents are outside the scope of Rule 26 discovery and protected in accordance with the peer review privilege and the self-critical or self-evaluation privilege. [Doc. 47-2, at 3.] Without waiving such objections, the government refers Franklin to medical records served on April 4, 2013.   It also produced a privilege log stating what documents it withheld along with the grounds for doing so. [Doc. 55, at 4] (*referring to* Doc. 35 and Ex. A.).

The United States also supplemented its disclosures by providing 1800 pages of records. Due to the recent production, Franklin's attorney may not have been able to review the documents, so it is unclear if the motion is moot with respect to this Request.  The Court sustains the government's objection, but gives Franklin leave to refile a motion relating to this Request within ten (10) days after entry of this Order if the production of documents did not resolve the issue.

**Request for Production No. 2**

This request seeks information concerning the cost of medical care rendered to Franklin or documents showing the cost or value of medical care given, including costs paid by Medicare and Medicaid, and costs determined on a "per visit basis pursuant to federal statutes and regulations, and costs associated with contract care, i.e., paid by the United States for care given by outside healthcare providers." [Doc. 47-2, at 4.]

The United States objected on grounds that the request was overly broad and unduly burdensome.  It also objected on the ground that UNM's billing practices are equally available to Franklin and can be obtained from UNM directly.  Without waiving the objections, the government stated it was attempting to locate documents evidencing cost or value of Franklin's care at NNMC and would produce such documents upon receipt.  In a supplemental response, the government produced NNMC billing documents, Bates-stamped 1617, 1618-1626. [Id.]

In Franklin's reply, she states they have a "major disagreement" about the response to Request No. 2.  According to Franklin, the government provides care to Native Americans in facilities operated by the Indian Health Service and it pays for care provided by outside facilities. Franklin argues that "Defendant has been flippant, providing a one-page indecipherable documents with dollar values listed in total sums without any description of services or any way of deciphering what the numbers mean." [Doc. 61, at 4, Ex. 6.]  Franklin contends that the government should have

15

provided a document to explain the medical expense figures it produced and how they were calculated. Franklin avers that she cannot say, at this point, what her total medical expenses related to this case have been and that the United States has this information in its possession. [Doc. 61, at 5.]

The United States already produced certain responsive documents. The Court sustains the government's objections. Thus, the request to overrule the United States' objections as to Request No. 2 is denied.

### Request for Production No. 3

This request asks the United States to produce "all policies, procedures, rules, regulations, protocols, guidelines, standards, training and other manuals, decision tree(s), algorithm(s), certifications and licenses, memoranda, and written practices applicable to NNMC and GIMC in August - October 2010, that address or deal with eight different areas, including gynecological surgery, treatments for cancer of the reproductive system, unintended damage to adjacent organs and body parts during surgery, prevention of surgical errors, differential diagnosis." [Doc. 47-3, at 4-5.]

The government objected on grounds that the request is overly broad and unduly burdensome. It further noted that any medical provider may refer to many publications at some point in his or her career. Without waiving these objections, the government stated that NNMC was searching for any internal publications and would provide them if found. In a supplemental response, the United States noted production of documents, Bates-stamped 1627-1636. [Id., at 5.]

Franklin's reply does not clarify that a dispute still remains as to Request No. 3. [Doc. 61, at 5.] She merely argues that the government raised irrelevant objections and "said things that were odd."

16

This Request is exceedingly broad and barred by the requirements of Rule 26(b)(2)(C) in that it is not proportional to the needs of the case. The information may be obtained from other sources that are more convenient, less burdensome and less expensive. Moreover, the United States supplemented its initial disclosures. The Court sustains the government's objections, and denies Franklin's request to overrule. The United States need not respond further to Request No. 3.

**Request for Production No. 4**

This Request seeks "[c]omplete personnel files and records of all persons who were in the operating room at the time of Betty Franklin's surgery" and the same type of personnel type information apparently for "all employees" listed in answers to discovery or in initial disclosures as potential witnesses. Franklin specified that she sought "applications for employment, job history, educational history, personal history, contract documents, curriculum vitae, job evaluations and appraisals, and applications for privileges through the present." [Doc. 47-3, at 5-6.]

The government objected on grounds that the request sought documents that are not calculated to lead to the discovery of admissible evidence, in that the documents are not relevant to liability or damages. The government also objected on grounds that the requested documents contained private and confidential information. Without waiving its objections, the government produced the CVs of Dr. Wilder and Dr. Kang. In a supplemental response, the government provided documents, <u>Bates</u>-stamped 1684-1688. [<u>Id.</u>, at 6.]

In its responsive brief, the government argued that the request is overly broad in that it does not seek documents relevant to the issues in this case – whether the medical providers' care of Franklin from October 14, 2010 to October 25, 2010 fell within the standard of care, causation and damages. Franklin argues that the request is appropriate "because it could produce evidence showing that the surgery done on Ms. Franklin should have been done at a major facility." She

17

further asserts that materials in Dr. Wilder's personnel file "possibly reflect on her change of jobs within the Indian Health Service, or possible problems with her job performance . . . ." [Doc. 61, at 6.]

The Court is unpersuaded.  Franklin makes no pretense of the relevancy of all of these documents and fails to show why the privacy rights of those nurses, anesthesiologists, technicians, attendants, and surgeons are outweighed by her curiosity and speculation.  As stated previously, the Court must consider numerous factors in the balancing process under Rule 26(b)(2)(C), including the requestor's need for the information from this particular source; the relevance of the requested information to the litigation; the burden of producing the sought-after materials; and the harm or difficulty which would be caused to a party seeking to protect information.  Koch, 203 F.3d at 1228; Burka, 87 F.3d at 517.  The Court properly balances one party's right of discovery with the opposing party's right to be free from intrusive and burdensome requests.  In balancing the rights and needs of parties, the Court may deny the request altogether, limit the conditions, time, place or topics of discovery, or limit the manner in which the material will be disclosed.  Id.; Fed. R. Civ. P. 26(b)(2)(C).

Franklin does not make any valid argument as to why the personnel files of all individuals are relevant to the claims and defenses.  In balancing the privacy interests of those who were present at any time in the operating room with Franklin's interests in obtaining the information, the Court sides with the privacy interests of the individuals and denies Franklins motion to overrule the United States' objections  to Request No. 4.

**Request for Production No. 5**

Franklin seeks:

> A copy of any and all statements made by Betty Franklin concerning her medical condition, your care and treatment of it, and any of the issues involved in this litigation, including any written statement, signed or otherwise adopted or approved by Betty Franklin, and any stenographic, mechanical, electrical, or other such recording, or any transcription thereof.

The government objected on the same grounds set out in response to Request No. 1, namely that the request seeks overly broad information, is not calculated to lead to the discovery of admissible evidence, and relates to information prepared in anticipation of litigation. [Doc. 47-3, at 6.]

The Court sustains the government's objections and further concludes that Request No. 5 is unclear and, again, seeks information available from other sources. Franklin is the best source of any statements that she made about her medical condition, and the medical records will reflect any statements she provided to the United States. Those records are already available to Franklin and, therefore, under Rule 26(b)(2)(C)(i), the Court limits the discovery sought.

In addition, the request is broad enough to encompass privileged information, including work product. Finally, it requires the United States to be somewhat clairvoyant to determine what documents "including any written statement, signed or otherwise adopted or approved by Betty Franklin . . . ." means. If it means the United States should provide written statements that Franklin made, then Rule 26(b)(2)(C)(i) limits the government's obligation to provide information that is available from other sources, including Franklin herself.

The Court sustains the government's objections and denies Franklin's motion to overrule objections to Request No. 5.

**Request for Production No. 6**

This Requests asks for "all statements, including those of the employees of NNMC involved in Betty Franklin's surgery on October 14, 2010 . . . that were made or given about Betty Franklin or the issues involved in this litigation."   The government again refers to objections raised in response to Request No. 1. [Doc. 47-3, at 6.]

The Request does not indicate whether these were statements purportedly made in preparation for litigation, statements within the attorney-client privilege, or simply statements made by healthcare providers to Franklin in preparation for or subsequent to surgery.

To the extent that there are written statements prepared in the ordinary course of business and not included in the current medical records, they must be produced.  If, however, the statements are part of the medical records that are otherwise available to Franklin, they need not be produced. Under the latter scenario, the Court must deny the request in accordance with Rule 26(b)(2)(C)(i), as these statements are available from other sources that are more convenient, less burdensome or less expensive.  If Franklin is seeking statements made by Dr. Wilder to her attorneys, or in preparation for litigation, they would be protected under the rules of privilege.

The Court sustains the government's objections in part and overrules them in part as indicated above.

**Request for Production No. 7**

Franklin seeks "[c]opies of all documents reflecting all peer review, quality assurance, and all other meetings, hearings, and minutes thereof, whether formal or informal relating to the care and treatment provided to Betty Franklin . . . ."  By the request's own description, it seeks peer review information that is protected under § 41-9-5 NMSA 1978 (2012 Supp.), as well documents protected by the self-critical and self-evaluation privileges.

Apart from the statute granting protection, public policy supports peer review.  This process encourages open, frank and candid discussions about policy and procedure, and intends to improve health care and prevent injury.  To foster these discussions, confidentiality is extended to:

> [a]ll data and information acquired by a review organization in the exercise of its duties and functions shall be held in confidence and shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization or in a judicial appeal from the action of a review organization.

§ 41-9-5(A) NMSA 1978.

It is clear under the Peer Review Organization Immunity Act that original source documents are not immune from discovery merely because they were presented during the peer review process.  However, Franklin did not distinguish original source documents in the request, but specifically sought "all" peer review information.

The Court concludes that peer review documents are protected under § 41-9-5.  Indeed, criminal liability is imposed for an improper disclosure.  *See* § 41-9-6 NMSA 1978 (1996 Repl.) (imposing up to 6 months imprisonment and a fine of up to $100 for a disclosure other than authorized).

The Court sustains the objections as to peer review documents, but if there are "original source" documents, the government must produce them.  Thus, Franklin's motion to compel supplemental information is granted in part and denied in part.

### **Request for Production No. 8**

Franklin seeks all documents reflecting Dr. Wilder's hospital privileges at NNMC and other IHS facilities.  The government objected on grounds that the request seeks information not reasonably calculated to lead to the discovery of admissible evidence.  It further objected on grounds of privacy and confidentiality.  Without waiving the objections, the United States provided Franklin

21

with Dr. Wilder's CV and the request for clinical privileges for Drs. Wilder and Kang. [Doc. 47-3, at 7.] This is insufficient.  A request for privileges is not the same as the receipt of hospital privileges.

Franklin does not explain why the documents provided are insufficient,[2] but the Court is unsure of exactly what was provided.  The Court agrees that Dr. Wilder's privileges are discoverable and, therefore, requires the United States to provide documents evidencing the doctor's privileges at the pertinent facility(s) and any changes in the privileges for two years prior to the incident and one year following the incident.

Therefore, the Court grants Franklin's request to compel supplemental information as to this Request, as described.

**Request for Production No. 9**

Franklin seeks "[a]ll memoranda, correspondence, claim forms, and other documents of any kind relating to all grievances and formal complaints, including FTCA administrative claims, filed against NNMC involving gynecology and gynecological surgery."

The government objected on grounds that the request was not reasonably calculated to lead to the discovery of admissible evidence and, more specifically, that Franklin did not seek documents that were relevant to liability or damages. [Doc. 47-3, at 7-8.]

---

[2]Franklin's reply brief is not very helpful in deciphering what specific disputes still exist. [Doc. 61.] The reply deals with a significant number of document requests and arguments, but does not always set out the disputes separately in terms of interrogatory or request numbers. For example, Franklin discusses Request Nos. 4 and 8 together and provides more than a page-long paragraph.  In that paragraph, the Court did not find any mention of hospital privilege information, what she has in that regard, and what she needs.  Instead, Franklin relies on generalized argument that the rules of civil procedure favor full disclosure.  She speculates there could be some information in the files that either is insignificant or helpful. [Doc. 61, at 5-7.] In another paragraph, without a specific reference to Request No. 8, Franklin states she "should not be handed a CV and an application for privileges at NNMC (and not Chinle) . . . ." [Id., at 7.]

The Court sustains the government's objections and further finds that Request No. 9 is overly broad. While prior claims against the surgeon would be relevant and discoverable, Franklin does not attempt to limit her request, to time, place, or even physician. Instead, the request apparently seeks all claims filed at any time against NNMC as to gynecology and gynecological surgery, notwithstanding who performed the surgery or when it was performed.

The request is overly broad, not sufficiently tailored to claims and defenses, and not proportional to the claims in this case. Therefore, the Court denies Franklin's motion to overrule the United States' objections to Request No. 9.

### **Request for Production No. 11**

This Request seeks:

> All documents reflecting all lawsuits in which NNMC has been sued in the last ten years for medical malpractice involving abdominal and gynecological surgery, including documentation reflecting the names and addresses of the plaintiffs; the names and addresses of all defendants; the date, court, and docket number where suit was instituted; the factual allegations of the plaintiff(s); and whether the case was settled, tried to verdict, or dismissed.

The government objected on grounds that the request sought information not reasonably calculated to lead to the discovery of admissible evidence. [Doc. 47-3, at 8.] In Franklin's reply, she discusses why relevancy should be construed broadly. [Doc. 61, at 8.] In addition, she states that the information sought is relevant to "explore" whether certain problems create an environment where medical negligence flourishes. [Id.]

The request again is overly broad. It is not limited, for example, to medical malpractice claims brought against these physicians or against NNMC. Moreover, to the extent there are claims, court records are as available to Franklin's attorneys as they are to the United States. Franklin does not indicate that she conducted docket searches in the District of New Mexico or elsewhere. Instead,

she argues she should not be put to the task, because she is a 70-year-old Navajo from a remote area on the Navajo Indian Reservation, who does not have parity with the government. [Doc. 61, at 9.] The Court is unpersuaded that counsel for Franklin is unable to conduct the search for information it seeks.

Further, the scope of the requested lawsuit information far exceeds the claims in this case. The modifications of Rule 26 in 1993 and 2000 limited relevancy to claims and defenses of the parties. In this case, the information sought goes far beyond the claims and defenses of the parties in this case.

The Court sustains the United States' objections and denies Franklin's motion to overrule the government's objections to Request No. 11.

### Request for Production Nos. 12 and 13

These Requests concern "photographs, films, videotapes, or surveillance pictures," "drawings, diagrams, models, sketches, or slides that pertain to your treatment of Betty Franklin during the course of her care and treatment at NNMC," that will be used in the defense of this case.

While this information is, indeed, discoverable, it is part of the government's mandatory disclosure obligation and expert disclosure obligation under Rule 26. Franklin does not have the right to obtain that information from the government's experts prior to the expert disclosure date established by the Court. However, she does have the right to obtain any exhibits, film, photograph, diagram, model, etc. that the government will rely on in the trial of this case. Accordingly, the government shall produce those materials on which it intends to rely at trial, and to the extent they are expert diagrams, etc., it will produce those materials in accordance with its expert disclosure deadline.

Accordingly, the Court grants in part and denies in part Franklin's motion to compel additional information to Request Nos. 12 and 13, as noted.

**Request for Production No. 14**

This Request duplicates an interrogatory where Franklin sought the same information. Franklin requests all documents, including learned treatises and medical articles, that state, discuss, bear upon the standard of care applicable to the surgery performed by Dr. Wilder on Franklin. The government objected on grounds that the request is overly broad and unduly burdensome, and in addition, equally available to Franklin.

The Court agrees that the types of documents Franklin seeks pertain to materials that an expert witness may rely on in providing an opinion. Thus, to the extent a defense expert relies on "learned treatises and medical articles," the expert is required to disclose that information as part of the expert report. Franklin may not circumvent the Court's timing and schedule of disclosures by seeking the same information in a request for production.

The Court sustains the government's objections and denies Franklin's motion to overrule Defendant's objections to Request No. 14.

**Request for Production No. 15**

Franklin seeks:

> Copies of all documents reflecting the complete details of protocols, policies, and procedures in force and effect at NNMC on October 14, 2010, relating to the entry, addition, and modification of information in a patient's medical charge by <u>all</u> physicians, nurses, and other staff involved in the patient's care.

[Doc. 47-3, at 10] (emphasis in original). The government stated it was attempting to determine if any such policies existed and would provide them if so. However, in a supplemental response, the United States answered that no such policies were found. [<u>Id.</u>]

25

The Court cannot require production of documents that do not exist.  As the United States responds it has no such policies, the Court therefore denies Franklin's motion to overrule the government's response to Request No. 15.

**Request for Production No. 16**

Franklin asks that the United States "produce all documents you reviewed during the administrative review of plaintiff's claim, in answering plaintiff's complaint, and in preparing your initial disclosures in this case."  The government objects on grounds asserted in response to Request No. 1. [Doc. 47-3, at 10.]

The Court sustains the government's objections and further finds that the request is exceedingly broad.  Any arguable relevancy under Rule 26 is outweighed by the burden and expense imposed on the United States.  Therefore, the Court denies Franklin's motion to overrule the United States' objections to Request No. 16.

**Request for Production No. 17**

This request asks for "the work schedules of staff involved in the surgery performed . . . for the time period from two months prior to the surgery October 14, 2010, through two weeks after that date."  The government objected on grounds that the request was overly broad and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving its objections, the United States noted it was unable to locate any of the requested schedules but was continuing to look for them.  It further stated it would produce any such schedules for the limited time requested should it locate them. [Doc. 47-3, at 10.] In its response, the government states it provided the work schedules of the two surgeons who operated on Franklin, for two weeks before and after Franklin's surgery.  The government contended, in its response, that a request for months of scheduling was not relevant to the only issues in the case. [Doc. 55, at 11.]

Franklin argues that work schedules are relevant and that it would not be onerous for the government to provide the responsive documents. "Objecting seems almost gratuitous." [Doc. 61, at 10.]

The Court disagrees.   While the government responded by producing more limited information than Franklin requested, the Court observes it would not have directed a response to the request as phrased.  The Request does not seek information that is arguably relevant.  Indeed, this is the kind of discovery request that is routinely condemned by commentators.  *See, e.g.*, Judge Paul Grimm's discussion in Mancia., 253 F.R.D. at 359-363.

Why anyone's work schedule two weeks after the surgery is of any relevance to the claims and defenses in this case is puzzling.  So, too, work schedules for weeks or months prior to the surgery date simply have no bearing.  If Franklin contends that the doctors were fatigued as a result of excessive hours worked the day or two before surgery, that limited information might be relevant.  But the wholesale request for everyone's work schedule months before and weeks after is unreasonable and not in proportion to the needs of the case.

The Court denies Franklin's motion to overrule the United States' objections to Request No. 17, and the government need not provide any further response to the request.

### Request for Production No. 18

Franklin not only sought an organizational  and physical layout of GIMC, but also:

> documents identifying administrative staff, nursing staff, medical staff, and all departments within the hospital; internal directories, including telephone directories, for NNMC for the years 2010-2013; and maps or diagrams of the inside premises of NNMC, in particular maps showing hospital layout by room and room numbers (e.g., a blueprint, map, survey, layout, floor plan, drawing, graphic representation, or illustration that accurately illustrates the floor plan of NNMC in October, 2010[)].

The government objected on grounds that the request was overly broad and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving the objections, the United States offered an organizational chart from October 2010 and a layout of the hospital. [Doc. 47-3, at 11.]

Franklin argues that the government's "compliance with the request was half-hearted.  It provided an illegible map of the facility on 8½ by 11 inch paper, and then provided one that was only a marginal improvement.  The organizational list did not identify anyone who occupied any of the positions.  The internal directory, which we have obtained in other cases, was not provided at all." [Doc. 61, at 10.]

The Court disagrees with Franklin's position and sustains the objections.  Documents that might identify administrative, nursing, and medical staff in 2010-2013, including telephone directories, simply are not relevant to the claims or defenses in this lawsuit.  A hospital may have hundreds of employees, blueprints, maps, surveys, and floor plans of the hospital.  Franklin did not persuade the Court that internal directories and telephone numbers for years back of all employees have any bearing on the claims and defenses in this lawsuit.

The Court concludes that Request No. 18 is not proportional to the needs in this case and denies Franklin's motion to overrule the United States' objections.

## Conclusion

For the reasons stated above, the Court grants in part and denies in part Franklin's two motions [Docs. 46, 47] requesting that the Court overrule the United States' objections and require additional answers/responses to discovery.  To the extent that the Court required the government to

provide additional supplementation and responses to the written discovery at issue, the United States

must produce that information to Franklin within fifteen (15) days after entry of this decision.


Lorenzo F. Garcia
United States Magistrate Judge