IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BETTY FRANKLIN,

    Plaintiff,

v.                                                                        CIV 12-1167 KBM/CG

THE UNITED STATES OF AMERICA

    Defendant.

**MEMORANDUM OPINION AND ORDER ON**
**UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on the United States' Motion for Summary Judgment (*Doc. 85*) filed November 5, 2013. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties consent to have me serve as the presiding judge and enter final judgment. *Docs. 13*. Having reviewed the parties' submissions and the relevant law, the Court finds that the United States' Motion for Summary Judgment is well-taken in part and will be granted in part.

**I.   FACTUAL BACKGROUND**

The following facts are viewed in a light most favorable to Plaintiff as the non-moving party for purposes of the instant motion for summary judgment:

Plaintiff concedes that Dr. Wilder did not breach the standard of care at to the surgical technique that she used in the procedure performed on Plaintiff on September 28, 2010 or by failing to obtain adequate tissue during that procedure. *Doc. 83,* Ex. 3, 67:1-21; 80:1-10. However, Dr. Domush opined that, given the condition of Plaintiff's cervix and the pathology report issued after the September 28, 2010 procedure, which

indicated possible invasive cancer, Dr. Wilder should have realized that Plaintiff's case was not routine and should have referred Plaintiff to the University of New Mexico Hospital ("UNMH"). *Id.* at 67:1-4, 69:20-25, 70:3-7, 73:20-74:3, 75:19-76:6.

After reviewing Plaintiff's pathology report, Dr. Wilder called a UNMH gynecologist oncologist, Dr. Rutledge, for advice for the next steps in Plaintiff's care. *Doc. 85*, Ex. F, 102:12-19. Dr. Wilder testified that she "would have told [Dr. Rutledge] about every piece of information that [she] had" concerning Plaintiff. *Id.* at 116:10-13. Dr. Wilder also explained, however, that the pathology report was "a little bit confusing" because it "said definite invasion not seen, and then, elements suggesting possible invasion." *Id.* at 100:17-23. She testified that what she "got" from the report was that the diagnosis was CIN 3 CIS (cancer in situ stage III) and that invasion was not seen. *Id.* at 100:2-4, 102:12-15. Dr. Wilder suggested that the "possible invasion" language used in the pathology report may have been included to "cover[] their behind." *Id.* at 101:2-4. Dr. Wilder did not provide copies of the pathology report to Dr. Rutledge, because Dr. Rutledge did not ask for them. *Id.* at 116:14-18.

Dr. Domush testified that whether it is reasonable for an ob/gyn to follow the recommendation of a gynecologist oncologist depends upon the information provided to the oncologist. *Doc. 83*, Ex. C, at 134:18-25. He suggested that if a doctor provided "all relevant information," there would be no reason not to follow the suggestions of the oncologist. *Id.* at 135:10-16. At the same time, he testified that he could not believe that a gynecologist oncologist presented with a pathology report indicating "possible invasion" would advise that a "regular gynecologist" should perform a hysterectomy. *Doc. 107*, Ex. 4, at 111:1-8.

While Dr. Wilder did not breach the standard of care in *scheduling* Plaintiff's hysterectomy, *see Doc. 83*, Ex. 3, 49:6-20, Dr. Domush has opined that it was ultimately below the standard of care for her to *perform* the surgery, *id.* at 46:8-25, 7:1.  Dr. Domush criticizes Dr. Wilder:  (1) for failing to perform a staging procedure as the initial step in the October 14, 2010 hysterectomy; (2) for not obtaining a cystoscopy; and (3) for continuing the procedure instead of referring Plaintiff to UNMH upon observing an "enlarged, firm cervix" and thickened parametria.  *Doc. 83*, Ex. B.

First, with the regard to the need for a staging procedure, Dr. Domush explained that when, as in this case, there is a suspicion of cancer, it is the standard of care to perform a staging procedure.  *Doc. 83*, Ex. C, at 102:16-23.

Second, Dr. Domush opined that "when worried about the proximity to the bladder during its removal from the cervical area and placement of sutures, Dr. Wilder had to consider obtaining a cystoscopy." *Doc. 107*, Ex. 3 at 2, ¶ 5.  Dr. Domush explained that a cystoscopy is 100 percent accurate in finding sutures in the bladder.  *Doc. 83*, Ex. C, at 116:10-13, 117:11-16.  He also concluded that a cystoscopy was warranted during Plaintiff's procedure based upon Dr. Wilder's own operative report.  *Doc. 107*, Ex. 4 at 17.  Although Dr. Wilder testified that she felt that Plaintiff's surgery was straightforward and routine, and she did not anticipate any problems with Plaintiff's ureter or bladder, *Doc. 85*, Ex. F, at 6:13-22, Dr. Domush testified that "from all of that information that Dr. Wilder had prior to making the incision, [she] should have known that this case had the potential for being anything other than routine . . . ."  *Doc. 107*, Ex. 4, at 53:20-24.

Dr. Domush acknowledged that damage to the bladder and ureter can occur during a hysterectomy even in the absence of negligence. *Doc. 83*, Ex. C, at 129:14-16.  In fact, he testified that it was not necessarily a breach of the standard of care for Dr. Wilder to have placed a stitch in Plaintiff's bladder.  *Id.* at 131:19-25.  However, he also testified that had Dr. Wilder followed the standard of care, which would have required her to refer Plaintiff to UNMH, Dr. Wilder would not have been in a position to place the stitch in Plaintiff's bladder.  *Id.* at 132:1-8.

Finally, in his expert report, Dr. Domush opined that Dr. Wilder breached the standard of care by not stopping the October 14, 2010 hysterectomy and referring Plaintiff to UNMH when she encountered an "enlarged, firm cervix" and "thickened parametria."  *Doc. 83*, Ex. B, at ¶ 4.  On the other hand, during his deposition, he testified that he did not consider it malpractice for Dr. Wilder to have failed to recognize cancer intraoperatively.  *Doc. 83*, Ex. C, at 158:5-12.  He went on to explain that while Dr. Wilder's surgical technique was appropriate, and he didn't "know if she could have recognized" the cancer, she "never should have been there" doing the October 14, 2010 hysterectomy because oncology was not her field.  *Doc. 107*, Ex. 4, at 156:5-15; *Doc. 83,* Ex. C at 158:7-15, 159:10-14.

## II.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "genuine" dispute exists where the evidence is such that a reasonable fact-finder could resolve the issue either way.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986)).  A mere scintilla of evidence in the non-movant's favor is not sufficient.  *Anderson*, 477 U.S. at 252.  However, the court must consider all the evidence in the light most favorable to the party opposing summary judgment.  *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

Both the movant and the party opposing summary judgment are obligated to "cit[e] to particular parts of materials in the record" to support their factual positions.  Fed. R. Civ. P. 56(c)(1)(A).  Alternatively, parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B); *see also Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" (internal quotation and citation omitted) (alteration in original)).  Materials cited to establish the presence or absence of a genuine dispute must be in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).

**III. ANALYSIS**

The Court previously determined that Plaintiff failed to exhaust a negligence claim as to Dr. Wilder's performance of the September 28, 2010 cold knife cone procedure, *see Doc. 151* at 20, which renders that portion of the United States' Motion for Summary Judgment moot.  As to the other claims at issue, some survive summary judgment, while others do not.

Although a close call, the Court finds that Plaintiff has presented sufficient evidence from which a reasonable fact-finder could determine that Dr. Wilder breached

the standard of care both in undertaking Plaintiff's October 14, 2010 hysterectomy and in failing to refer Plaintiff to UNMH.  Although there is also evidence to the contrary, Dr. Domush's testimony that the pathology report, which indicated possible invasive cancer, should have caused Dr. Wilder to refer Plaintiff to UNMH supports Plaintiff's allegations that Dr. Wilder was negligent in undertaking the October 14, 2010 hysterectomy in lieu of referring Plaintiff to UNMH.

Additionally, Plaintiff has presented sufficient evidence from which a reasonable fact-finder could determine that Dr. Wilder breached the standard of care both in failing to obtain a cystoscopy and in failing to perform a staging procedure during the October 14, 2010 hysterectomy.  Although Dr. Domush testified that Dr. Wilder did not breach the standard of care in scheduling Plaintiff's hysterectomy or in her surgical technique, he did opine, both in his expert report and during his deposition, that she breached the standard of care in failing to perform a staging procedure or obtain a cystoscopy.

The Court agrees, however, that Plaintiff has not provided sufficient evidence for a reasonable fact-finder to conclude that Dr. Wilder breached the standard of care by failing to recognize or diagnose Plaintiff's cancer intraoperatively.  Indeed, Plaintiff's own expert, Dr. Domush, testified that he did not consider it malpractice for Dr. Wilder to have failed to recognize cancer intraoperatively.  On the other hand, it bears mentioning that Plaintiff *has* presented evidence that Dr. Wilder breached the standard of care in a related, albeit distinct, manner -- by continuing Plaintiff's October 14, 2010 hysterectomy upon encountering certain anatomical abnormalities.  Given the possibility that Plaintiff had invasive cancer, a reasonable fact-finder could conclude that even if Dr. Wilder could not recognize or diagnose Plaintiff's cancer during the course of the October 14,

2010 operation, she should have nevertheless stopped the surgery upon discovering an enlarged, firm cervix and thickened parametria, which could be signs of cancer.

In light of Dr. Domush's testimony that a cystoscopy is 100 percent accurate in finding sutures in the bladder, as well as his testimony that a cystoscopy was warranted in this particular case, Plaintiff has presented sufficient evidence from which a reasonable fact-finder could determine that Dr. Wilder breached the standard of care in failing to recognize intraoperatively, through the use of a cystoscopy, the stitch in Plaintiff's bladder.

Plaintiff concedes that she has not presented evidence that Dr. Kang's care fell below the standard of care and clarifies that she is not making a claim based on Dr. Kang's negligence. *Doc. 107* at 22.  Plaintiff also concedes that she is not making a claim as to the cut-through of cancer, as such a claim was not included in her tort claim notice. *Doc. 107* at 22 n.36.  The Court, therefore, will grant summary judgment in favor of the United States on these two claims.

Wherefore,

**IT IS HEREBY ORDERED** that the United States' Motion for Summary Judgment (*Doc. 32*) is well-taken in part and will be granted in part.  Summary judgment will be granted in favor of the United States as to Dr. Kang's negligence, Dr. Wilder's purported cut-through of cancer, Dr. Wilder's performance of the September 28, 2010 surgery, and Dr. Wilder's failure to recognize or diagnose Plaintiff's cancer intraoperatively, and such claims will be dismissed with prejudice.  In all other respects, the motion is denied.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE